# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CASE NO.: 22-11324-JJ
District Court Docket No.: 21-cv-21191-DPG

---

MAURICIO USME, M.D., SAFETY OFFICER LUKASK
ZUTEREK, CAROLINA VASQUEZ, JAVIER PEREZ,
JOHAN ORTIZ, LUZ GAVILAN AND MARVIN PAZ,

Appellants,

vs.

CMI LEISURE MANAGEMENT, INC.;
CRUISE MANAGEMENT INT'L, INC., and
VIKAND MEDICAL SOLUTIONS, LLC,

Appellees.

---

Appeal Taken From
United States District Court
Southern District Of Florida

---

## APPELLANT'S INITIAL BRIEF

---

PHILIP D. PARRISH, P.A.
*Counsel for Appellants*
7301 SW 57th Court, Suite 430
Miami, FL 33143
Tel. No.: 305-670-5550
Facsimile No.: 305-670-5552
Email: phil@parrishappeals.com

By: */s/ Philip D. Parrish*
     Philip D. Parrish
     Florida Bar No. 541877

THE PELTZ LAW FIRM, P.A.
*Counsel for Appellants*
P. O. Box 56-003
Miami, FL 33256
Tel. 786-732-7219
Email: RPeltzlaw@gmail.com

By: */s/ Robert D. Peltz*
     Robert D. Peltz
     Florida Bar No. 220418

LOUIS A. VUCCI, P.A.
*Counsel for Appellants*
One S.E. Third Avenue
Suite 3020
Miami, FL  33131
Tel. 305-573-0125
louis@thevuccilawgroup.com
vuccilawgroup@gmail.com

By: ***/s/ Louis A. Vucci***
     Louis A. Vucci
     Florida Bar No. 131581

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The Appellants Mauricio Usme, M.D., Safety Officer Lukasz Zuterek, Carolina Vasquez, Javier Perez, Johan Ortiz, Luz Gavilan and Marvin Paz, by and through their undersigned counsel and pursuant to FRAP 26.1 and the 11th Cir. R. 26-1-2(c), hereby file their Certificate of Interested Persons, and state:

### <u>TRIAL JUDGES:</u>

Gayles, Darrin P. – U.S. District Court Judge

Torres, Edwin G. – U.S. District Court Magistrate Judge

### <u>ATTORNEYS:</u>

Chavez, Gilda M. – Attorney for Appellees

Clair, William F. – Attorney for Appellees

Gutierrez, Annalisa B. – Attorney for Appellees

Gutwein, Evan S. – Attorney for Appellees

Hamilton, Jerry D. – Attorney for Appellees

Hamilton, Miller & Birthisel, LLP. – Attorneys for Appellees

Louis A. Vucci, P.A. – Attorney for Appellants

Parrish, Philip D. – Attorney for Appellants

Peltz, Robert D. – Attorney for Appellants

Philip D. Parrish, P.A. – Attorney for Appellants

The Peltz Law Firm, P.A. – Attorney for Appellants

Vucci, Louis A. – Attorney for Appellants

**<u>PARTIES:</u>**

CMI Leisure Management, Inc. – Appellee/Defendant

Cruise Management International, Inc. – Appellee/Defendant

Gavilan, Luz – Appellant/Plaintiff

Ortiz, Johan – Appellant/Plaintiff

Paz, Marvin – Appellant/Plaintiff

Perez, Javier – Appellant/Plaintiff

Usme, Maurico, M.D. – Appellant/Plaintiff

Vasquez, Carolina – Appellant/Plaintiff

Vikand Medical Solutions, LLC. – Appellee/Defendant

Zuterek, Lukasz, Safety Officer – Appellant/Plaintiff

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument.  This appeal involves complex legal arguments of both a procedural and substantive nature and the Appellants believe that oral argument will benefit the Court and the parties.

## CERTIFICATE OF TYPE SIZE AND FONT

Undersigned counsel certifies that the size and style of type used in this brief is 14-point Times New Roman.

## <u>TABLE OF CONTENTS</u>

Page

CERTIFICATE OF INTERESTED PERSONS .....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

CERTIFICATE OF TYPE SIZE AND FONT ....................................................... i

TABLE OF CONTENTS......................................................................................... ii

TABLE OF AUTHORITIES .................................................................................. iv

STATEMENT OF JURISDICTION.........................................................................1

ISSUES PRESENTED: ............................................................................................1

     I.    Whether the District Court Erroneously Ruled That *Szumlicz* is "Outdated Case Law" and Thus Skipped the *Lauritzen-Rhoditis* Analysis of Whether U.S. Maritime Law Applies to this Case?................ 1

     II.  Whether Plaintiffs Sued the Florida-Based Non-Signatories on a Valid Borrowed Servant Theory Which Raises Factual Issues That Must Be Determined After a Full Record Has Been Developed, and Therefore, it Was Error to Apply Equitable Estoppel?...................................................................................... 1

     III. Whether the Forum Selection Clause Is Void Because it Violates 45 U.S.C. §55?.......................................................................... 1

     IV. Whether the Forum Selection Clause Contravenes U.S. Policy? .............. 1

STATEMENT OF THE CASE AND FACTS .........................................................1

STANDARD OF REVIEW .....................................................................................8

SUMMARY OF THE ARGUMENT ......................................................................9

ARGUMENT .........................................................................................................10

I. THE DISTRICT COURT ERRONEOUSLY RULED THAT *SZUMLICZ* IS "OUTDATED CASE LAW" AND THUS SKIPPED THE *LAURITZEN-RHODITIS* ANALYSIS OF WHETHER U.S. MARITIME LAW APPLIES TO THIS CASE ........................................................................................... 10

II. PLAINTIFFS SUED THE FLORIDA-BASED NON-SIGNATORIES ON A VALID BORROWED SERVANT THEORY WHICH RAISES FACTUAL ISSUES THAT MUST BE DETERMINED AFTER A FULL RECORD HAS BEEN DEVELOPED.  THEREFORE, IT WAS ERROR TO APPLY EQUITABLE ESTOPPEL ........................................................ 22

III. THE FORUM SELECTION CLAUSE IS VOID BECAUSE IT VIOLATES 45 U.S.C. §55 ................................................. 35

IV. THE FORUM SELECTION CLAUSE CONTRAVENES U.S. POLICY ........................................................................... 40

CONCLUSION .................................................................................47

CERTIFICATE OF COMPLIANCE ...............................................47

CERTIFICATE OF SERVICE ........................................................47

# TABLE OF AUTHORITIES

Page(s)

Cases

*Archer v. Trans/American Services, Ltd.*,
  834 F.2d 1570 (11th Cir. 1988) ............................................................25

*Atlantic Marine Const. Co. v. U.S. Dist. Ct.*,
  571 U.S. 49 (2013) ............................................................ 7, 16, 17, 20

*Atlantic Sounding Co., Inc. v. Townsend*,
  557 U.S. 404 (2009) ...................................................................... 35, 36

*Bahamas Sales Associate, LLC v. Byers*,
  701 F.3d 1335 (11th Cir. 2012) ......................................... 8, 9, 26, 32

*Barrios v. Louisiana Construction Materials Co.*,
  465 F.2d 1157 (5th Cir. 1972) ..............................................................23

*Bartholomew v. Universe Tankerships, Inc.*,
  263 F.2d 437 (1959) ..............................................................................19

*Bautista v. Star Cruises*,
  396 F.3d 1289 (11th Cir. 2005) ............................................................10

*Bay State Dredging & Contracting Co. v. Porter*,
  153 F.2d 827 (1st Cir. 1946) ................................................................45

*Bochese v. Town of Ponce Inlet*,
  405 F.3d 964 (11th Cir. 2005) ..............................................................34

*Boyd v. Grand Trunk Western R. Co.*,
  338 U.S. 263 (1949) ...................................................................... 38, 42, 43

*Brooklyn Sav. Bank v. O'Neil*,
  324 U.S. 697 (1945) ..............................................................................37

*Calmar S.S. Corp. v. Taylor*,
  303 U.S. 525 (1938) ..............................................................................35

*Cappello v. Carnival Corp.*,
  2012 WL 3291844 (S.D. Fla. Aug. 10, 2012) ................................ 29, 30

*Castillo v. Spiliada Maritime Corp.,*
    937 F.2d 243 (5th Cir. 1991) ........................................................................ 21, 41

*Chandris, Inc. v. Latsis,*
    515 U.S. 347 (1995) ...................................................................................... 35, 36

*Collie v. Fergusson,*
    281 U.S. 52 (1930) ...............................................................................................21

*Cooper v. Meridian Yachts, Ltd.,*
    575 F.3d 1151 (11th Cir. 2009) ............................................................... 26, 33, 34

*Cortes v. Baltimore Insular Lines,*
    287 U.S. 367 (1932) .............................................................................................35

*Cortez v. Palace Resorts, Inc.,*
    123 So.3d 1085 (Fla. 2013) ...............................................................................16

*Cosmopolitan Shipping Co. v. McAllister,*
    337 U.S. 783 (1949) .............................................................................................39

*Cox v. Roth,*
    348 U.S. 207 (1955) ...................................................................................... 35, 39

*Cvoro v. Carnival Corp.,*
    941 F.3d 487 (11th Cir. 2019) ..................................................................... 16, 43

*Duncan v. Thompson,*
    315 U.S. 1 (1942) ................................................................................................38

*Epic Systems Corp. v. Lewis,*
    138 S.Ct. 1612 (2018) .........................................................................................18

*Evans v. United Arab Shipping Co. S.A.G.,*
    4 F.3d 207 (3d Cir. 1993) ...................................................................................22

*Garrett v. Moore-McCormack Co.,*
    317 U.S. 239 (1942) ...................................................................... 21, 35, 45, 46

*Gaudet v. Exxon Corp.,*
    562 F.2d 351 (5th Cir. 1977) ..............................................................................25

*Goodloe v. Royal Caribbean Cruises, Ltd.*,
  1 F.4th 1289 (11th Cir. 2021) ................................................................8

*Guidry v. S. Louisiana Contractors, Inc.*,
  614 F.2d 447 (5th Cir. 1980) ........................................................ 24, 27

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ...............................................................................18

*Hall v. Diamond M Co.*,
  635 F.Supp. 362 (E.D. La. 1986) ........................................................23

*Harden v. Gordon*,
  11 Fed.Cas. 480 (1823) ................................................................. 36, 45

*Hellenic Lines Ltd. v. Rhoditis*,
  398 U.S. 306, 90 S. Ct. 1731, 26 L.Ed.2d 252 (1970) ............................... passim

*Hogue v. So. R. Co.*,
  390 U.S. 516 (1968) ...............................................................................38

*Hurtado v. Balerno Int'l Ltd.*,
  2019 WL 8160701 (S.D. Fla. 2019) ....................................................29

*Jacob v. New York*,
  315 U.S. 752 (1942) ...............................................................................22

*Kelley v. Southern Pacific Co.*,
  419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974) ...........................23

*Kernan v. American Dredging Co.*,
  355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958) ............... 23, 36, 43

*Krenkel v. Kerzner Int'l Hotels Ltd.*,
  579 F.3d 1279 (11th Cir. 2009) .............................................................8

*Langfitt v. Federal Marine Terminals, Inc.*,
  647 F.3d 1116 (11th Cir. 2011) ...........................................................24

*Lauritzen v. Larsen*,
  345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) ...................... passim

*Lipcon v. Underwriters at Lloyd's, London*,
   148 F.3d 1285 (11th Cir. 1998) ............................................................... 32, 33, 34

*M/S Bremen v. Zapata Off-shore Co.*,
   407 U.S. 1 (1972) ........................................................................................... passim

*Mahramas v. Am. Exp. Isbrandtsen Lines, Inc.*,
   475 F.2d 165 (2d Cir. 1973) .............................................................................25

*Membreno v. Costa Crociere, S.p.A.*,
   425 F.3d 932 (11th Cir. 2005) ........................................................ 9, 13, 14, 15

*Miles v. Apex Marine Corp.*,
   498 U.S. 19 (1990) ................................................................................... 17, 18

*Mobil Oil Corp. v. Higginbotham*,
   436 U.S. 618 (1978) .........................................................................................18

*Moragne v. States Marine Lines, Inc.*,
   398 U.S. 375 (1970) .........................................................................................35

*Nall v. Mal-Motels, Inc.*,
   723 F.3d 1304 (11th Cir. 2013) .......................................................... 21, 37, 41

*Norfolk So. Ry. Co. v. Sorrell*,
   549 U.S. 158 (2007) .........................................................................................37

*O'Donnell v. Great Lakes Dredge & Dock Co.*,
   318 U.S. 36 (1943) ...........................................................................................35

*Phil., Balt. & Wash RR Co. v. Schubert*,
   224 U.S. 603 (1912) ............................................................................ 37, 38, 39

*Pineda v. Oceania Cruises, Inc.*,
   283 F.Supp.3d 1307 (S.D. Fla. 2017) ........................................................ 30, 31

*Reyes v. Cruise Ship Catering & Services, Intern. N.V.*,
   2006 WL 2389441 (S.D. Fla. 2006) .................................................................15

*Roberts v. Carnival Corp.*,
   824 Fed.Appx. 825 (11th Cir. 2020) ........................................................... 28, 31

*Romero v. International Terminal Operating Co.*,
  358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) ...............................................11

*Rozanska v. Princess Cruise Line, Ltd.*,
  2008 WL 8883868 (S.D. Fla. Aug. 5, 2008)................................................. 41, 46

*Ruiz v. Shell Oil Co.*,
  413 F.2d 310 (5th Cir. 1969) ......................................................................... 24, 25

*Sarmiento Lopez v. CMI Leisure Management, Inc.*,
  565 F.Supp.3d 1271 (S.D. Fla. 2021)...................................................... 27, 28, 29

*Seas Shipping Co. v. Sieracki*,
  328 U.S. 85 (1946) .................................................................................................35

*Smith v. BP Am., Inc.*,
  522 F. App'x 859 (11th Cir. 2013)................................................................. 22, 24

*Socony-Vacuum Oil Co. v. Smith*,
  305 U.S. 424 (1939) ...............................................................................................35

*Spinks v. Chevron Oil Co.*,
  507 F.2d 216 (5th Cir. 1975) .................................................................................24

*Standard Oil Co. v. Anderson*,
  212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909) .................................................23

*Szumlicz v. Norwegian Am. Line, Inc.*,
  698 F.2d 1192 (11th Cir. 1983) ..................................................................... passim

*Touloumes v. Kerzner Int'l Bahamas, Ltd.*,
  2014 WL 1012248 (S.D. Fla. Sept. 26, 2014)......................................................17

*U.S. Bulk Carriers, Inc. v. Arguelles*,
  400 U.S. 351 (1971) ................................................................................. 18, 35, 39

*Usme v. CMI Leisure Management, Inc.*,
  2022 WL 910336 (S.D. Fla. 2022).....................................................................7, 8

*Vasquez v. YII Shipping Co.*,
  692 F.3d 1192 (11th Cir. 2012) .............................................................................14

*Vasquez v. YII Shipping Co.,*
559 Fed. Appx. 841 (11th Cir. 2014) ............................................................ 15, 20

*Vaughn v. Atkinson*,
369 U.S. 527 (1962) ...............................................................35

*Walker v. Braus*,
995 F.2d 77 (5th Cir. 1993) ...............................................................23

*Webster v. Royal Caribbean Cruises, Ltd.*,
124 F.Supp.2d 1317 (S.D. Fla. 2000)...............................................................46

*Welsh v. Utah Dredging Co.*,
403 F.2d 217 (3d Cir. 1968) ...............................................................23

*Wheatley v. Gladden*,
660 F.2d 1024 (4th Cir. 1981) ...............................................................22

*Wicker v. Consolidated Rail Corp.*,
142 F.3d 690 (3d Cir. 1998) ...............................................................37

*Wilburn v. Maritrans GP Inc.,*
139 F. 3d 350 (3d Cir. 1998) ...............................................................22

*Wolf v. Celebrity Cruises, Inc.*,
683 Fed.Appx. 786 (11th Cir. 2017) ...............................................................34

Statutes

28 U.S.C. §1291 ...............................................................1

28 U.S.C. §1332(a)(2) ...............................................................1

28 U.S.C. §1404(a) ...............................................................17

28 U.S.C. §1331 ...............................................................19

42 U.S.C. §§ 264, 268 ...............................................................1

45 U.S.C. §55 ............................................................... passim

46 U.S.C.A. §30104 ............................................................... 22, 36

Rules

11th Cir. R. 26-1 ..................................................................................1

FRAP 26.1..............................................................................................1

FRAP 32(a)(7)(B) .................................................................................47

## <u>STATEMENT OF JURISDICTION</u>

The district court had jurisdiction pursuant to 28 U.S.C. §1332(a)(2) in that each of the Plaintiffs were citizens of a foreign country and each of the Defendants were citizens of the State of Florida. This Court has appellate jurisdiction pursuant to 28 U.S.C. §1291 because the Order on appeal is a final order of dismissal.

## <u>ISSUES PRESENTED:</u>

I.    Whether the District Court Erroneously Ruled That *Szumlicz* is "Outdated Case Law" and Thus Skipped the *Lauritzen-Rhoditis* Analysis of Whether U.S. Maritime Law Applies to this Case?

II.    Whether Plaintiffs Sued the Florida-Based Non-Signatories on a Valid Borrowed Servant Theory Which Raises Factual Issues That Must Be Determined After a Full Record Has Been Developed, and Therefore, it Was Error to Apply Equitable Estoppel?

III.    Whether the Forum Selection Clause Is Void Because it Violates 45 U.S.C. §55?

IV.    Whether the Forum Selection Clause Contravenes U.S. Policy?

## <u>STATEMENT OF THE CASE AND FACTS</u>

The Plaintiffs consist of seven crew members working aboard a small excursion cruise ship, the *Greg Mortimer*, which set sail on a voyage from Ushuaia, Argentina to the Antarctic <u>after</u> the CDC had issued its No Sail Order[1] on March 14,

---

[1] Pursuant to Sections 361 & 365 of the Public Health Service Act (42 U.S.C. §§ 264, 268) and 42 CFR Part 70 (Interstate) and Part 71 (Foreign), the CDC issued its

2020, due to the then burgeoning Covid pandemic. (DE 16, p. 2; 5-6). As a result, 62% of the vessel's occupants (97 passengers and 37 crew, including six of the plaintiffs) contracted Covid with varying degrees of severity, including one death. (DE 16). Because of the presence of Covid onboard, the ship had to remain at anchor outside of the port of Montevideo, Uruguay for six weeks as the South American ports refused it entry. (DE 16, para. 33).

The six crewmembers who had contracted Covid were forced to stay in isolation. (*Id.*) Eventually, the passengers were flown home, but the crew was transferred to a hotel in Montevideo, where they continued to be held in isolation for another four weeks, when they were finally repatriated home. (*Id.*)

The seventh plaintiff was the ship's Safety Officer, Lukasz Zuterek. Although he did not contract Covid, he asserted claims for retaliatory discharge and false imprisonment. (DE 16, p. 41-46). He was fired by the Captain and then confined to his cabin after protesting the safety of the ship's original repatriation plan. (DE 16, paras. 94; 101). This plan called for the vessel to sail for three (3) weeks from South America back across the Atlantic Ocean with the contagious crewmembers to the

---

"Notice of No Sail Order and Other Measures Related to Operations" prohibiting either the embarkation of any new passengers and crew or the commencement of any operations without the express authorization of the designated appropriate federal authorities. The order, which was "effective immediately," applied to all passenger-carrying vessel subject to the jurisdiction of the United States with a combined capacity of 250 passengers and crew. See https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf.

Canary Islands, from which the seamen would be flown back across the Atlantic Ocean to their home countries in Central and South America. (DE 16, para. 34). Defendants eventually abandoned their plan after the Honduran government protested its risk of further injury to the Honduran seamen. (DE 16-1).

The ship was operated and managed by two related companies in Miami with the same ownership, the Defendants CMI Leisure Management, Inc. ("CMI-Leisure") and Cruise Management International, Inc. ("CMI"), also referred to collectively as "the Miami CMI entities." (DE 16, paras. 9-10). Although the Miami CMI entities also controlled the crews' work performance, the crewmembers were forced to sign employment contracts with straw Bahamian paper companies created solely to circumvent the application of U.S. law.[2] (DE 16, paras. 16-17; DE 20-1 – 20-4).

Five of the Plaintiffs (Vasquez, Perez, Ortiz, Gavilan and Paz) signed contracts with paper entity CMI Leisure, Ltd. ("CMI Bahamas"), which was incorporated in the Bahamas. That entities' President, Deitmar Wertanzl,[3] (20-1),

---

[2] Although the district court opinion acknowledges that the Plaintiffs raised this issue below, *Usme* at *n. 6, it fails to address the Plaintiff's arguments regarding its legal significance to the validity of the forum selection clause as discussed throughout this brief. Nor does the opinion question the sufficiency of the evidence in the record supporting the Plaintiffs argument regarding the Bahamian entities lack of offices, employees, assets or operations.

[3] This deposition was taken in the case of *Funez v. CMI* Leisure Management, Inc., Case No. 20-21860 (Cooke), which involved the same counsel on both sides. Mr.

testified that this entity was merely a paper company with no shoreside offices or employees that simply used a law firm in Nassau as a mail drop.[4] Accordingly, all of its business activities were performed by the Defendant CMI-Leisure, which was in Miami and owned by the same individuals. DE 20-1, Wertanzl deposition at p. 8, 21-7, 30, 36, 41-5, 195; DE 20-2, CMI-Leisure Management Contract; DE 20-3, Francis Declaration and DE 20-4, Bain Declaration.  These five plaintiffs sued CMI-Leisure as borrowed servants under the Jones Act and CMI, the vessel's manager, for negligence under general maritime law.   (DE 16, paras. 55-68).

The remaining two plaintiffs (Usme and Zuterek) signed contracts with a different paper Bahamian entity, Infinity Owner I, Limited ("Infinity"), which likewise has no Bahamian offices or employees. See Declaration of Bahamian Investigator Elston Bain, DE 20-4. There was also a factual dispute as to whether this entity even existed when the contracts were signed. *Compare* Plaintiff's Second

---

Wertanzl testified that he was president of both CMI-Leisure and CMI Bahamas and hence a managing agent of each. He also was produced for deposition as the Rule 30 (b)(6) corporate representative of CMI-Leisure. DE 20-1 at p. 4-5. No objection was asserted in the trial court to the use of Mr. Wertanzl's sworn testimony from the Funez case, nor was any controverting evidence or testimony presented.

[4] Wertanzl acknowledged:

  Q:  So as far as the Bahamas goes, all CMI Bahamas is, is just a mail drop
     in care of a law firm.?
  A: That's—yes. Sounds about right.

DE 20-1 at p. 7-8. See also 20-3, Declaration of Bahamian Investigator Wellington Francis.

Notice of Supplemental Authority, (DE 26) with Defendant's Declaration in Opposition (DE 27).[5] Since the work of these two plaintiffs was controlled by the Defendant CMI, they asserted Jones Act claims against it under the borrowed servant doctrine.

Because the paper Bahamian companies had no shoreside employees and offices, the job duties and actual work of the Plaintiff seamen were controlled by the Miami CMI entities, making those Miami entities their Jones Act employers under the borrowed servant doctrine. DE 20-1. See also, DE 16 at paras. 16-17.

The crewmember contracts with the paper Bahamian companies contained forum selection and choice of law clauses calling for all suits to be filed in the Bahamas and be governed by Bahamian law.  Since the straw Bahamian companies were not involved in either the operation of the vessel or the management of the crew, the plaintiffs only sued the Miami CMI entities, who were *not* signatories to the contracts,[6] besides their Ft. Lauderdale based medical consultant, Vikand

---

[5] Mr. Barreiro's deposition had been set for March 31, 2022, two days prior to the issuance of the district court's order granting Defendants' motion to dismiss.

[6] The Miami CMI entities signed the contracts "On behalf of the Owners (*As Agents Only*)." See Declaration of Jim Barreiro de Leon, President of CMI, DE 17-4 at ¶¶ 12-14 ("13. It is the regular practice of CMI Inc. to make the Contract of Employment *on behalf of and as agents only* for the employer.") (emphasis added); Declaration of Dietmar Wertanzl, President of both CMI-Leisure and CMI Bahamas, DE 17-3 at ¶¶ 15-17 (16. "It is the regular practice of CMILM, INC. to make the Contract of Employment *on behalf of and as agents only* for the employer, CMI Leisure, Ltd [Bahamas].")(emphasis added).

Solutions, LLC. ("Vikand") for its role in sailing after the CDC's No Sail Order.

## The Course of Proceedings Below

The Florida-based Defendants moved to dismiss the Amended Complaint on the grounds of "improper venue" based upon the forum selection clause in contracts with the *non-party* paper Bahamian companies, which had not been referenced in or attached to Plaintiff's Amended Complaint. (DE 17). The Defendants also argued that the Plaintiffs were equitably estopped to avoid the forum selection clause by suing non-signatories. (DE 17, p. 8-9).

The Plaintiffs responded, raising several arguments. First, Plaintiffs raised the procedural point that the purported contracts with the paper Bahamian companies could not be considered on a motion to dismiss because they were neither referenced in, central to, nor attached to the Plaintiffs' Amended Complaint. (DE 20, p. 4-5). Second, the Plaintiffs argued that their Jones Act claims were brought under the borrowed servant doctrine against the Florida-based Defendants, and, thus, were in no way dependent upon the written contracts with non-defendants. (DE 20, p. 5-8). Plaintiffs also argued that the forum selection and choice of law clauses were unenforceable because the Florida-based Defendants were not parties to the contracts, and the equitable estoppel exception does not apply. (DE 20, p. 8-14). Finally, the Plaintiffs argued that U.S. maritime law governs the case and therefore forum non conveniens could not be a basis for dismissal. (DE 20, p. 14-17).

Without conducting a hearing, the district court granted the Defendants' Motion to Dismiss.  (DE 38).  The district court began its analysis by holding that a motion to dismiss for improper venue is the incorrect procedural vehicle to enforce a forum-selection clause where venue is otherwise proper as it was in this case," citing to *Atlantic Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49 (2013). *Usme v. CMI Leisure Management, Inc.*, 2022 WL 910336 at *2 (S.D. Fla. 2022).  The district court stated that in the interest of judicial economy, it would treat the Defendants' motion as a motion to dismiss based upon forum non conveniens.  (DE 38, p. 4).

Relying upon *Atlantic Marine*, the district court held that "'when the parties contract contains a <u>valid</u> forum selection clause,'" the court will no longer consider the private interest factors in the normal forum non conveniens analysis, but only the public interest factors, so the forum selection clause will control "'except in unusual cases.'"[7]  (DE 38, p. 5).  In undertaking its analysis of the validity of the forum selection clause, the court started with the presumption that such clauses are "valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances," citing to a land-based

---

[7] *Id.* at *3. Since neither of the Bahamian entities had any employees or offices in the Bahamas, there were no witnesses or documents located there.

circuit court resort injury opinion.[8]  It then cited several tests adopted by several circuit courts in land-based cases to determine the adequacy of foreign forums, including that "Courts need ask 'only whether some remedy exists.'"[9] Under this standard, the court concluded that the Bahamas provided a sufficient alternate forum and granted the motion to dismiss.  (DE 38, p. 9).

The court's dismissal was erroneous for several reasons which require a reversal.

## STANDARD OF REVIEW

Conflict of laws issues present a legal question which appellate courts review *de novo*.  *Goodloe v. Royal Caribbean Cruises, Ltd.*, 1 F.4th 1289, 1292 (11th Cir. 2021).  This Court reviews a district court's factual determination – where one is made – concerning whether a shipowner has a substantial base of operations in the United States for clear error.  *Szumlicz v. Norwegian Am. Line, Inc.*, 698 F.2d 1192, 1996 (11th Cir. 1983).

Likewise, this Court reviews the enforceability of a forum selection clause and the issue of whether the doctrine of equitable estoppel applies under the *de novo* standard of review.  *Bahamas Sales Associate, LLC v. Byers*, 701 F.3d 1335 (11th Cir. 2012).

---

[8] *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279 (11th Cir. 2009).

[9] 2022 WL 910336 at *5.

## SUMMARY OF THE ARGUMENT

This is a Jones Act maritime case filed by seven crewmembers who sued three Florida-based entities who actually controlled their work under the borrowed servant doctrine. The district court granted those Florida-based Defendants' Motion to Dismiss, erroneously ruling that *Szumlicz v. Norwegian American Line*, 698 F.2d 1192 (11th Cir. 1983), which requires the district court to first determine whether U.S. maritime law applies, was "outdated" authority, and was superseded by *Membreno v. Costa Crociere, S.p.A.*, 425 F.3d 932 (11th Cir. 2005). As a result, the district court erroneously failed to undertake a *Lauritzen-Rhoditis* analysis.

Second, the district court improperly disregarded the Plaintiffs' fact intensive borrowed servant theory of liability against these Florida-based Defendants, and improperly relied upon a forum selection clause contained in a contract with non-parties to this lawsuit, even though those contracts were (a) not mentioned in the Plaintiffs' Complaint, (b) are not central to the Plaintiffs' non-contract-based borrowed servant tort claims, and (c) the validity of the contracts are disputed. Thus, it was improper to consider those contracts, and even more improper to dismiss this action under the theory that the non-signatory Florida-based Defendants could invoke the equitable estoppel theory. *See, e.g., Bahamas Sales Assoc., LLC v. Byers*,

9

701 F.3d 1335 (11ᵗʰ Cir. 2012). Finally, the district court erred by not finding the forum selection clauses violated 45 U.S.C. §55, and because they contravene United States statutory policy.[10]

## ARGUMENT

I.    **THE DISTRICT COURT ERRONEOUSLY RULED THAT *SZUMLICZ* IS "OUTDATED CASE LAW" AND THUS SKIPPED THE *LAURITZEN-RHODITIS* ANALYSIS OF WHETHER U.S. MARITIME LAW APPLIES TO THIS CASE**

The district court committed reversible error by ignoring the procedures established in *Szumlicz v. Norwegian American Line*, 698 F.2d 1192 (11ᵗʰ Cir. 1983) for determining the validity of foreign forum selection clauses in seaman's contracts and by instead utilizing the doctrine of forum non conveniens to enforce the clauses in the contracts with the paper Bahamian entities to deprive the Plaintiffs of the remedies provided to them by Congress in the Jones Act.

*Szumlicz* holds that whether the Jones Act applies to a given case involves a question of choice of law. *Id.* at 1195. First, the court must decide, under choice of law principles, whether the law of the United States should be applied. *Id. Szumlicz*

---

[10] This case does *not involve arbitration* under the Convention on the Enforcement of Foreign Arbitral Awards ("Convention"). Cases construing this treaty and its enabling statute, which are based upon statutory construction and the "strong presumption in favor of arbitration of international commercial disputes," are not applicable. *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11ᵗʰ Cir. 2005).

unequivocally holds that "if United States law [i.e. the Jones Act] applies, the case should not be dismissed for forum non conveniens." *Id.* at 1195. Here, the district court skipped the first essential step, because it erroneously reasoned that *Szumlicz* is "outdated case law." (DE 38, p. 4, n. 5). At a minimum, this Court must reverse and remand for a proper consideration of this issue.

The factors for determining the choice of law question were established by the United States Supreme Court in what is referred to as the *Lauritzen-Romero-Rhoditis* trilogy. *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 90 S. Ct. 1731, 26 L.Ed.2d 252 (1970); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). For ease of reference, we will refer to these as the *Lauritzen* factors, named after the original decision. In *Lauritzen* the Supreme Court identified seven relevant factors:  the (1) place of the wrongful act; (2) law of the flag; (3) allegiance or domicile of the injured; (4) the allegiance or domicile of a defendant shipowner; (5) place of contract; (6) inaccessibility of a foreign forum; and (7) law of the forum. *Lauritzen*, 345 U.S. at 582-93. In 1970 in *Rhoditis*, the Supreme Court added a sometimes dispositive eighth factor – whether the defendant has a base of operations in the United States. As *Rhoditis* and *Szumlicz* observe, these factors are not an exhaustive list, and the test is not a mechanical one.

In *Rhoditis* the Supreme Court emphasized the overarching importance of the

11

shipowner's base of operations. *Id.* at 309. In *Rhoditis* at least four of the seven *Lauritzen* factors favored the application of Greek law: the ship's flag was Greek; the seaman was Greek; the employment contract was Greek; and there was a foreign forum available in Greece. *Id.* at 308. Nevertheless, the Supreme Court ruled:

> We see no reason whatsoever to give the Jones Act a strained construction so that this alien owner, engaged in an extensive business operation in this country, may have an advantage over citizens engaged in the same business by allowing him to escape the obligations and responsibility of a Jones Act 'employer.'

*Id.* at 310. The Supreme Court concluded that "[t]he façade of the operation must be considered as minor, compared with the real nature of the operation and a cold objective look at the actual operational contacts that this ship and this owner have with the United States." *Id.* at 310.

In *Szumlicz*, this Court observed that the *Rhoditis* gloss on the *Lauritzen* factors indicates that the appropriate application of the United States law to the foreign seaman's suit is dependent on the substantiality of the defendant's contacts with the United States. *Szumlicz*, 698 F.2d at 1195. In *Szumlicz* the factors disfavoring United States law were even more prevalent. The place of the wrongful act was a voyage between San Juan, Puerto Rico and the United States; the law of the flag was Norwegian; the plaintiff was domiciled in Poland; the shipowner was Norwegian; the place of contract was Norway and Germany; a forum was accessible in Norway; and the law of the forum was Norway. *Id.* at 1196. Nevertheless, this

Court found the *Rhoditis* "gloss" on the *Lauritzen* factors to be determinative.  *Id.* at 1196.

Here, the Defendants did not even challenge the applicability of the Jones Act to the Plaintiffs under the *Lauritzen-Rhoditis* factors as all three Defendants are Florida corporations, which maintain their base of operations in either Miami or Ft. Lauderdale. By adopting the Jones Act, Congress created a specific remedy for seamen, which includes "a civil action at law, with the right of trial by jury," and not provided by Bahamian law, which the district court did not have the *discretion* to deny to the plaintiffs.

The district court ignored *Szumlicz* by *erroneously* holding that it is "outdated case law." (DE 38, p. 4, n. 5).   In a non sequitur, the district court then observed that "The Eleventh Circuit has since held that a district court did not abuse its discretion in *dismissing a Jones Act case* based upon the doctrine of forum non conveniens.  *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932 (11th Cir. 2005)." (DE 38, p. 4, n. 5).

Even a cursory reading of *Membreno* demonstrates the error in the court's reliance upon it for this proposition, since *both* this court and the district court in *Membreno* first undertook a *Szumlicz* analysis to determine that the Jones Act was *not applicable* in those cases.  *Membreno*, like *Szumlicz*, found the *Rhoditis* base of operations factor dispositive:

13

> Thus, the only significant question is whether the defendants have a substantial base of operations in the United States warranting the application of United States law. If the defendants have a substantial base of operation in the United States, this factor alone can justify the application of United States law.

*Membreno*, 425 F.3d at 936 (citing *Szumlicz*, 698 F.2d at 1195-96).

Thus, in *explicit reliance* on *Szumlicz*, *Membreno* concluded that "the first step" in determining the applicability of forum non conveniens to a seaman's case is to undertake an analysis of the *Lauritzen-Rhoditis* factors. 425 F.3d at 936. "Costa's day-to-day operations are run from a 450-person office in Genoa, Italy." *Id.* at 936. *Membreno* concluded that "Costa does not maintain a substantial base of operations in the United States. Accordingly, the district court correctly concluded that United States law [the Jones Act] should *not* be applied to this case." *Id.* at 937. Unlike the paper Bahamian companies which purported to contract with the plaintiffs in this case, but which have no actual employees, offices, or operations, the shipowner/operator in *Membreno*, Costa Crociere, Sp.A., was an actual business whose undisputed base of operations – with its 450 actual employees – was located in Italy, not Miami, Florida.

Removing any conceivable doubt, this court reiterated its adherence to *Szumlicz* in *Vasquez v. YII Shipping Co.* ("*Vasquez I*"), 692 F.3d 1192, 1197 (11th Cir. 2012) ("Under the federal maritime choice-of-law test, applicable to Jones Act seafarers in federal district court, a case should not be dismissed on grounds of forum

non conveniens if federal maritime law applies to the case . . .”). And then again in *Vasquez v. YII Shipping Co*. (“*Vasquez II*”), 559 Fed. Appx. 841, 843 (11th Cir. 2014) (“If a plaintiff files a complaint that invokes admiralty jurisdiction, a district court may not dismiss the complaint based on forum non conveniens if federal maritime law applies. *Szumlicz v. Norwegian Am. Line, Inc.,* 698 F.2d 1192, 1195 (11th Cir.1983).”).

The district court also misapplied *Reyes v. Cruise Ship Catering & Services, Intern. N.V.*, 2006 WL 2389441 (S.D. Fla.  2006), which likewise involved a crewmember working aboard several Costa vessels for a concessionaire, with an Italian base of operations.  As in *Membreno*, *Reyes* first conducted the requisite *Lauritzen* analysis and found that U.S. law was not applicable to the case.

Although the district court in *Reyes* thereafter conducted a forum non conveniens analysis and found that the case should not be tried in the U.S., such an analysis here demonstrates the opposite -- *this* case clearly should be heard in Florida. **There are zero witnesses or documents located in the Bahamas** because the two Bahamian entities created by the owners of the Florida CMI corporations to circumvent U.S. law had no offices, employees, assets or operations in the Bahamas.

Instead, the management and operation of the vessel, and the recruitment, hiring, training and supervision of its crew all took place from the Defendants' base of operations in South Florida.  (DE 16, paras. 16-17). The same is true of their

medical consultant, Vikand, whose base of operations is Ft. Lauderdale. Therefore, while no witnesses or documents are in the Bahamas, there is an overwhelming abundance of witnesses, documents and evidence located in Florida.[11]

We are reminded of the observation of the Florida Supreme Court in *Cortez v. Palace Resorts, Inc.,* 123 So.3d 1085, 1097 (Fla. 2013) that:

> "a forum non conveniens argument coming from a party sued where [it] resides is *both 'puzzling' and strange*.'" Indeed, "the fact that the defendants are located in this country," and *especially in this state,* is one indication that it would be less burdensome for the defendants to defend suit in this country than it would be for [the plaintiff] to litigate in a foreign country." (emphasis added) (internal citations omitted).

Because *Szumlicz* controls, the district court erred by dismissing on the basis of forum non conveniens, which means the district court's reliance on *Atlantic Marine Construction Co. v. United States District Court for Western District of Texas*, 571 U.S. 49 (2013) was also erroneous.

Notwithstanding its maritime sounding name, *Atlantic Marine* had nothing to do with admiralty law or maritime entities. Nor did it involve the Jones Act, any statutory remedies established by Congress, choice of law issues, dismissal or any other principle approaching the "'explicit public policy that is well-defined and dominant' with respect to the solicitude of seamen." *Cvoro v. Carnival Corp.*, 941

---

[11] Because the district court transformed the Defendant's 12(b)(1) motion into a motion to dismiss on the basis of forum non conveniens, without providing notice to the Plaintiffs, or an opportunity to present evidence, the record is not as developed as one might expect with a proper forum non conveniens analysis.

F.3d 487, 498 (11ᵗʰ Cir. 2019).

Instead, *Atlantic Marine* considered the impact of a forum selection clause in a land-based construction contract in a lawsuit between two American companies arguing over which federal district court was the proper forum for their dispute concerning the payment due under their contract. The topic of the controversy was decidedly non-maritime in nature—the construction of a child-development center at an Army base in Texas—while the actual legal dispute centered upon applying the federal transfer of venue statute in 28 U.S.C. §1404(a).

While *Atlantic Marine* noted that "the same standards should apply to motions to dismiss for forum non conveniens in cases involving *valid* forum-selection clauses pointing to state or foreign forums," 571 U.S. 49 at n. 8 (emphasis added), that does not somehow transform an invalid clause into a valid one. The Court expressly cautioned, "Our analysis presupposes a contractually valid forum-selection clause."[12] And, *Atlantic Marine* had no occasion to address, let alone modify, the *Lauritzen-Rhoditis* analysis.

As the Supreme Court famously proclaimed in *Miles v. Apex Marine Corp.*, 498 U.S. 19, 36 (1990), "We sail in occupied waters. Maritime law is now

---

[12] *Id.* at n. 5. See e.g. *Touloumes v. Kerzner Int'l Bahamas, Ltd.*, 2014 WL 1012248 (S.D. Fla. Sept. 26, 2014) at *6 in refusing to apply *Atlantic Marine* to uphold a forum selection clause in a resort injury case occurring in the Bahamas, the court noted that among the grounds which will invalidate such a clause is where its enforcement "would contravene a strong public policy."

17

dominated by federal statute." As a result, it admonished that since "Congress retains superior authority in these matters . . . an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation." *Id*. at 27. Instead, it "must strictly keep within the limits imposed by Congress." *Id*. Nor, as further instructed in *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625-6 (1978) in interpreting the Jones Act, do courts have "authority to substitute [their] views for those expressed by Congress in a duly enacted statute."[13]

The doctrine of forum non conveniens is based upon a *court's discretion* to decline to hear a case where *it has jurisdiction and venue is proper*. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947). Therefore, to dismiss a seaman's case on the grounds of forum non conveniens, where the Jones Act is applicable and there are no other contravening statutes such as the Convention,[14] constitutes an exercise of *judicial indiscretion* by refusing to provide a seaman with the statutory remedy *expressly provided by Congress*. Because such conduct would constitute the type of

---

[13] Or as more simply stated in *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 357 (1971)(emphasis added): "What Congress has *plainly granted* we hesitate to deny."

[14] When there are two competing statutes, they must be reconciled. As pointed out by the Court in *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612, 1624 (2018) in such circumstances courts are "not at 'liberty to pick and choose among congressional enactments' and must instead strive "'to give effect to both.'" To act in such a manner "risks transforming [judges] from expounders of what the law *is* into policymakers choosing what the law *should be*." Id. (emphasis in the original). In this case, however, no such conflict exists, since there is only one statute involved— the Jones Act.

judicial activism expressly rejected by the Court in the above cited cases, it would clearly constitute an improper abuse of that discretion.

In order to prevent such abuses, a number of circuit courts, including this one, have established the firm rule that courts may not dismiss non-Convention cases on forum non conveniens grounds where the Jones Act is applicable. The adoption of this principle was not based upon any weighing of the traditional forum non conveniens factors, but instead upon the legal conclusion that where the Jones Act was applicable to the controversy courts do not have the *discretion* to override it.

As explained by the Second Circuit in a related context in *Bartholomew v. Universe Tankerships, Inc*., 263 F.2d 437, 443 (1959), quoted with approval in *Rhoditis*, 398 U.S. at 310,

> this is not a matter resting in the discretion of the trial judge, as seems to have been thought to be the case here. *The facts either warrant the application of the Jones Act or they do not*. Under 28 U.S.C. § 1331, once federal law is found applicable the court's power to adjudicate *must* be exercised.

(emphasis added).

To validly *import a new policy or procedure* from one legal setting into another, the court must first ensure that the underlying legal policies and principles are compatible and not inherently inconsistent with one another. That is clearly not the case here, in which the district court utilized a *judicially* created procedure based upon exercising *its discretion* developed in an unrelated land-based legal context

19

with different underlying policies, which did not address the need to safeguard the existence of *statutory* remedies for a legally protected class of individuals. To exercise that *discretion* by refusing to hear a case in which the Jones Act is applicable amounts to giving the court a choice to refuse to give the seamen a remedy created for their benefit by Congress, violating the court's role in the legal process.

Applying the procedure for determining the enforceability of forum selection clauses developed in *Atlantic Marine* to a seaman's case such as this is contrary to *Szumlicz,* since the two procedures are inherently incompatible in a seaman's Jones Act case.

*Atlantic Marine* did not overrule *Szumlicz* (or *Rhoditis*) since it did not involve the Jones Act, maritime law, conflicts of law, attempts to deprive legally protected classes of individuals of their federal statutory rights or choice of law issues to name a few distinctions.  This court has reaffirmed *Szumlicz* in *Vasquez II*, 559 Fed.Appx. 841 (2014), which was **decided after *Atlantic Marine*.**  Nor did the district court determine that *Atlantic Marine* overruled *Szumlicz.* Rather, the district court declared that *Szumlicz* was "outdated," which as discussed above is an *inaccurate statement.*

But even if *Atlantic Marine* could apply to foreign forum selection clauses, such clauses in seamen's contracts subject to the Jones Act are still invalid.  Since the Court repeatedly said that the new standard it enunciated only applies to "valid forum-selection clauses," *Atlantic Marine* does not create some new method for the

"unscrupulous" employers that the Court in *Collie v. Fergusson,* 281 U.S. 52,55 (1930), warned about to take advantage of their seamen.

Since the forum selection clauses in the seamen' contracts with the paper Bahamian entities were designed solely to circumvent U.S. law, they clearly were not "valid" under either 45 U.S.C. §55 or the extensive body of Supreme Court precedent, such as *Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 246-7 (1942), which treat seamen as wards of the admiralty. Similarly, the Bahamas, where neither paper company maintained either physical offices or employees and where the vessel never sailed, could hardly be considered "the most proper forum." Nor could the take-it-or-leave-it nature of the contractual clause be in any sense classified as actually "bargained for by the parties." *See Castillo v. Spiliada Maritime Corp.,* 937 F.2d 243 (5th Cir. 1991) (seamen enjoy the status as wards of the admiralty in part because "there exists a great inequity in bargaining position between large shipowners and unsophisticated seamen. Shipowners generally control the availability and terms of employment."). *See, Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013).

II.  **PLAINTIFFS SUED THE FLORIDA-BASED NON-SIGNATORIES ON A VALID BORROWED SERVANT THEORY WHICH RAISES FACTUAL ISSUES THAT MUST BE DETERMINED AFTER A FULL RECORD HAS BEEN DEVELOPED. THEREFORE, IT WAS ERROR TO APPLY EQUITABLE ESTOPPEL**

### A.    The Borrowed Servant Doctrine

The Jones Act confers a cause of action on any "seaman injured in the course of employment." 46 U.S.C.A. § 30104.  It therefore grants seamen who suffer personal injury in the course of their employment the right to seek damages in a jury trial against their employers. The employer under the Jones Act is liable in damages for injury resulting in whole or in part from the negligence of its officers. *See Jacob v. New York,* 315 U.S. 752, 755 (1942); *Wilburn v. Maritrans GP Inc.,* 139 F. 3d 350 (3d Cir. 1998).

Employer status is a prerequisite to potential Jones Act liability.  *Smith v. BP Am., Inc.*, 522 F. App'x 859, 863 (11th Cir. 2013).  However, it is well settled that identifying the proper Jones Act employer is a mixed question of law and fact within the province of the jury upon instructions by the trial court. *See Wheatley v. Gladden*, 660 F.2d 1024, 1026 (4th Cir. 1981) (concluding that in Jones Act cases, "[t]he existence of... an employer/employee relationship must be determined under maritime law" and that "resolution of the issue is normally a factual one within the province of a jury"); *Evans v. United Arab Shipping Co. S.A.G.*, 4 F.3d 207, 221 (3d

22

Cir. 1993); *Welsh v. Utah Dredging Co.*, 403 F.2d 217 (3d Cir. 1968); *see also Thomas J. Schoenbaum,* Admiralty and Maritime Law, Fourth Edition, §4-23, p. 282.

A seaman employed by one entity may be considered a temporary or shared employee for purposes of the Jones Act under **the borrowed servant doctrine**. *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 324, 95 S.Ct. 472, 476, 42 L.Ed.2d 498 (1974) (applying Federal Employers' Liability Act); *Kernan v. American Dredging Co.*, 355 U.S. 426, 439, 78 S.Ct. 394, 401, 2 L.Ed.2d 382 (1958); *Walker v. Braus*, 995 F.2d 77 (5th Cir. 1993). "The borrowed servant doctrine is a venerable one in maritime law, having been around since at least 1909." *Hall v. Diamond M Co.*, 635 F.Supp. 362, 364 (E.D. La. 1986) (citing *Standard Oil Co. v. Anderson*, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909)).   *Hall* explained the purpose of the doctrine:

> The purpose of the [borrowed servant doctrine] is to place the risk of a worker's injury on his **actual rather than his nominal employer** by permitting the injured worker to recover from the company that was **actually directing his work**. The rule therefore allows plaintiffs… to sue **a number of "employers"**, forcing them to argue their respective culpability to the jury.

*Hall*, 635 F. Supp. at 364 (internal citation omitted) (emphasis added).

A third person who borrows a worker may become his/her employer if the borrowing employer assumes enough control over the worker. *See Barrios v.*

*Louisiana Construction Materials Co.*, 465 F.2d 1157 (5th Cir. 1972); *see also Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969). "It may also be possible for a seaman to have more than one Jones Act employer." *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975). "[E]ven if a seaman is deemed to be a borrowed servant of one employer, this does not automatically mean that he ceases to be his immediate employer's servant for Jones Act purposes." *Guidry v. S. Louisiana Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980).

As this Court explained, "in determining a seaman's employer, control is the critical inquiry." *Smith v. BP Am., Inc.*, 522 F. App'x 859, 863 (11th Cir. 2013) (citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312 (5th Cir. 1969)). Control can often be shown by "(1) direct evidence that the [alleged] employer ... exercised control over the employee; (2) evidence that the [alleged employer] was responsible for paying the employee, (3) evidence that the [alleged employer] furnished equipment necessary for performance of the works; and (4) evidence that the [alleged employer] had the right to terminate its relationship with the employee." *Smith*, 522 F. App'x at 863 (citing *Langfitt v. Federal Marine Terminals, Inc.*, 647 F.3d 1116, 1123 (11th Cir. 2011)) (alterations in original).

Ultimately, the relevant factors are weighed according to what is appropriate in each particular case because "no one of these factors, or any combination of them, is decisive, and no fixed test is used to determine the existence of a borrowed-servant

24

relationship." *Gaudet v. Exxon Corp.*, 562 F.2d 351 at 356 (5th Cir. 1977) (citing *Ruiz v. Shell Oil Co., 413 F.2d 310, 312* (5th Cir. 1969)); *see also Mahramas v. Am. Exp. Isbrandtsen Lines, Inc.*, 475 F.2d 165, 171 (2d Cir. 1973) ("In determining a seaman's employer, a court must look to 'the plain and rational meaning of employment and employer,' ... which means that the right of control is one of the most important factors to consider") (citation omitted).

In *Mahramas*, the court dismissed the plaintiff's Jones Act claim and found the shipowner was not plaintiff's employer. *Id.* at 167. The court also rejected plaintiff's unseaworthiness and general negligence claims "because she failed to show by a fair preponderance of the evidence that the accident occurred as she has testified." *Id.* at 168. Of note, Judge Oakes dissented by stating that the majority erred in concluding "that a shipowner is not responsible to a seaman under the Jones Act if the seaman is also the employee of a ship concessionaire" and opined that the majority's decision was "an unfortunate one that would pave the way for shipowners to contract out ship functions to concessionaires…and thereby to avoid or minimize liability for defective conditions or other negligence on board the ship." *Id.* at 173. This Court rejected use of such an artifice in *Archer v. Trans/American Services, Ltd.*, 834 F.2d 1570, 1578 (11th Cir. 1988).

Determining the proper Jones Act employer is a mixed question of law and fact within the province of the jury upon instructions by the trial court. *Thomas J.*

*Schoenbaum,* Admiralty and Maritime Law, Fourth Edition, §4-23, p. 282. The district court erred by rejecting the basis of the Plaintiffs' tort suit.

###    B.    The District Court Erred By Considering The Contracts In The First Instance And By Applying The Doctrine Of Equitable Estoppel

To apply the forum selection clauses to the plaintiffs' case, the district court relied upon the equitable estoppel doctrine to allow the non-signatory Florida-based defendants to assume the benefit of these provisions. But that ruling is contrary to *Cooper v. Meridian Yachts, Ltd.,* 575 F.3d 1151, 1169 (11th Cir. 2009) which holds that as a contractual right forum selection clauses "cannot ordinarily be invoked by or against a party who did not sign the contract in which the provision appears." The district court relied upon *Bahamas Sales Assoc., LLC. v. Byers,* 701 F.3d 1335, 1342 (11th Cir. 2012), for the proposition that the doctrine of "'[e]quitable estoppel precludes a party from claiming the *benefits of some of the provisions of a contract* while simultaneously attempting to avoid the burdens that some provisions of the contract impose.'" (DE 38, p. 7) (emphasis added). The district court erroneously asserted that although the plaintiffs did not allege in their complaint that they were employed by the straw Bahamian companies, they were in effect seeking the benefit of these contracts by asserting claims under the Jones Act, reasoning that such claims only apply to a seaman's employer.

The first problem with the district court's ruling is that the plaintiffs had not

alleged that they were entitled to Jones Act benefits, because of their contracts with the paper companies. The plaintiffs' complaint did not refer to these contracts or the straw Bahamian companies at all.   Instead, plaintiffs alleged only that the plaintiffs could recover under the Jones Act against these Florida-based defendants via the borrowed servant doctrine, which imposes *tort* liability upon the non-signatories because of the control they exercised over the performance of the seamen's job duties.  See DE 16, paras. 16-7, 45-6 and 60-1.

As explained in the pre-*Bonner* opinion of *Guidry v. South Louisiana Contractors, Inc.,* 614 F.2d 447, 454 (5th Cir. 1980):

> a third person who borrows a worker may become his employer *if the borrowing employer assumes enough control over the worker*. However, even if a seaman is deemed to be a borrowed servant of one employer, this does not automatically mean that he ceases to be his immediate employer's servant for Jones Act purposes. *It may also be possible for a seaman to have more than one Jones Act employer.*

*Guidry* was recently and properly applied against these same defendants!  *See Sarmiento Lopez v. CMI Leisure Management, Inc*., 565 F.Supp.3d 1271 (S.D. Fla. 2021).  *Sarmiento* involved a contemporaneous suit arising from a different incident against the same two Miami CMI entities who filed a similar motion to dismiss arguing that the forum selection clause with the non-party Bahamian entity should be enforced.  The defendants claimed that the contract was central to the plaintiff's claims, "because 'but for' the Agreement Sarmiento would not have been employed on the Vessel and his employment on the Vessel led to the claims." *Id*. at 1277.

27

*Sarmiento* properly rejected the CMI entities motion to dismiss based upon *Roberts v. Carnival Corp.*, 824 Fed.Appx. 825 (11th Cir. 2020), which reversed the dismissal of a passenger's lawsuit based upon the district court's consideration of the one-year time bar provision contained in the ticket of passage. "The ticket contract is not central to her claims because it is not a necessary or essential part of Robert's effort to show that she was injured due to Carnival's negligence." *Id.* at 826. "In our view, the mere fact that the ticket contract may be relevant evidence-tending to show that Roberts was a valid passenger to whom Carnival owed a duty of care-is not alone enough to show that it was central to her claims." *Id.* at 827.

As here, the plaintiff in *Sarmiento* filed a Jones Act claim against one of the CMI entities under the borrowed servant doctrine.   He sued the other CMI entity, which managed the vessel, for negligence under general maritime law.  Judge Bloom rejected the same "but for" argument which Judge Gayles adopted below, properly holding that neither cause of action was based upon the employment contract with the paper Bahamian entity.

*Sarmiento* properly held that the Jones Act claim was based upon the defendant having "assum[ed] control over [plaintiff's] employment," *id.* at 1276 and as such "a formal employment contract was [neither] necessary or central to Plaintiff's claims." *Id.* at 1277.  The claim against the other CMI entity was "based on general maritime law . . . [which] does not require an employment relationship at

all." 565 F.Supp.3d at 1277. The same is true of the identical contracts and similar claims against the same two entities here. *See also Hurtado v. Balerno Int'l Ltd*., 2019 WL 8160701 (S.D. Fla. 2019).

As *Sarmiento* observed, it is well established that liability under the borrowed servant doctrine does not depend upon the existence of a contract with the defendant, nor is it precluded by the presence of a contract with *a third party*. The entire purpose of the doctrine is to impose Jones Act *tort* liability upon the party who actually controls the seaman's employment, where no employment contract exists between that party and the plaintiff.

The district court here erred by holding that the plaintiffs were seeking benefits under the employment agreements, as their claims were independent of any contracts with the straw Bahamian entities and were instead based upon the *statutory* provisions of the Jones Act, which *requires no contract, much less a written one*.

The district court's rationale for applying the equitable estoppel argument was analogous to the "but for" argument, which other courts in this circuit have rejected. For example, in *Cappello v. Carnival Corp.,* 2012 WL 3291844 (S.D. Fla. Aug. 10, 2012) the plaintiff was an officer employed by a concessionaire who was injured because of the alleged negligence of Carnival in failing to train him to properly mix chemicals, which exploded into his eyes, rendering him blind. Although not a signatory to the employment agreement, Carnival argued that it was entitled to the

benefit of its mandatory arbitration provision, because the plaintiff was injured while employed on its ship by virtue of the agreement.

The court rejected this argument based upon this court's prior authority that "explained the distinction between an agreement which is factually significant and one that serves as the basis for the plaintiff's claims," *Id*. at * 5, pointing out that only the latter is sufficient to give rise to equitable estoppel. While the contract may have been factually significant to explain why the plaintiff was on board the vessel, the court held that it did not support his claims, which were instead based upon violations of the Jones Act and general maritime law, rendering the doctrine of equitable estoppel inapplicable.

Similarly, in *Pineda v. Oceania Cruises, Inc*., 283 F.Supp.3d 1307 (S.D. Fla. 2017), the court held the doctrine of equitable estoppel doctrine inapplicable to allow a concessionaire, which actually controlled the plaintiff cabin steward's work and had been sued under the borrowed servant doctrine, to raise an arbitration clause in an employment contract with a nominal paper employer, because the suit was not based upon a breach of the contract. In language equally applicable to this case, the court rejected the application of the equitable estoppel doctrine because:

> [Pineda's] complaint pointedly alleges that she "was never directly supervised by any employee of International Cruise Services." (*Id.* at ¶ 13.) Three of her counts are lodged against Oceania, as Toruno Pineda's borrowed employer and the other three are directed against Nautica, as the owner of the ship. Ultimately, Toruno Pineda has set forth her claims against the nonsignatory Defendants in such a way that none of

them rely on the written agreements at issue in this case. . . .Pineda's complaint is clear: she bases her claim of Defendants' liability on: Oceania's status as her borrowing employer (*e.g.*, Compl. at ¶¶ 7, 8, 23, 24, 32, 33, 36, 41); and Nautica's status as the vessel owner (*e.g.*, *id.* at ¶¶ 10, 25, 26, 32, 33, 34, 54, 59, 68). Toruno Pineda repeatedly emphasizes: her claims arise under general maritime law. Nothing in her complaint "makes reference to" or "presumes the existence of" the Collective Agreement.

283 F.Supp.3d at 1311.

The court should not have considered the contracts with the Bahamian paper companies under *Roberts*, since they were neither mentioned in the complaint, nor central to the Plaintiff's claims, which were instead based upon the borrowed servant doctrine.

The district court's reliance upon *Byers* was even more puzzling, because *Byers* rejected the same "but-for" argument utilized by the district court below as the basis for application of equitable estoppel. In *Byers*, the plaintiff bought lots in the Bahamas from non-party Ginn-LA West End under contracts containing a Bahamian forum selection clause. *Byers* financed the sale with the counter-defendant Bahamas Sales Associates ("BAS") through a note and mortgage. When Byers discontinued payments, BAS sued him in Florida. *Byers* counterclaimed against BAS and other Bahamian non-signatories to the sales agreements alleging fraud. BAS' claim was dismissed for lack of jurisdiction, leaving only Byers' counterclaim.

In reversing the district court's use of the equitable estoppel doctrine to

dismiss Byers' counterclaim against BAS and the other Bahamian non-signatories, this court held that:

> the [plaintiff] must *actually depend on the underlying contract* to make out his or her claim against the nonsignatory. *The signatory must attempt to hold the nonsignatory to the terms of the contract.*
>
> *A but-for relationship between the claims and the contract "alone is not enough to warrant equitable estoppel"* . . . "For a plaintiff's claims to rely on the contract containing the arbitration provision, *the contract must form the legal basis of those claims*; it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them."

701 F.3d at 1343 (emphasis added).

Where, as here, the claims of the seamen are based upon the borrowed servant doctrine, the Jones Act and general maritime law, they clearly do not seek to enforce the terms of the purported employment contract with the non-parties and therefore, cannot give rise to the equitable estoppel doctrine under *Byers*.

Nor does the district court's reference to *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998) support its ruling. *Lipcon* did not involve maritime law, the Jones Act or the longstanding explicit public policy protecting seamen. Instead, it was a suit by *sophisticated investors and their spouses* against Lloyds, an international insurance market operated under British law, claiming fraud in the "selling of investment contracts," which allowed the investors to become members of insurance syndicates *in London. See Lipcon v. Underwriters at Lloyd's, London*, S.D. Fla. Case No. 96–1137–CV–FAM, DE 108, para. 2.

The non-signatory spouses had to sign notes and mortgages on their personal residences to obtain a letter of credit for their member spouses to purchase the investment contract. Besides damages, the complaint, *brought by both the signatory and non-signatory spouses,* sought *recission* of the contract and a *declaratory decree* as to the validity of various provisions in it, including the forum selection and choice of law clauses in it. Both the investment contract and the specific clauses sought to be rescinded were therefore central to the claims of both the signatory and non-signatory spouses.

Although this court stated that "'[i]n order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound," 148 F.3d at 1299, it defined those circumstance where such a close relationship exist, holding that

> as the district court found, the interests of the spouses in this dispute are *completely derivative of those of the Name plaintiffs*—and thus "directly related to, if not predicated upon" the interests of the Name plaintiffs. . .

*Id.* (emphasis added).

The importance of this qualifier, omitted by the district court's analysis, is confirmed by *Cooper v. Meridian Yachts, Ltd*., 575 F.3d 1151, 1170 (11th Cir. 2009) which distinguished *Lipcon* because the claims before it "did not derive from the agreement," since they existed independent of it, *just as in this case*. The critical importance of this factor—that the claims of the non-signatory must derive from the

agreement—was emphasized by *Cooper* – a distinctly maritime case – when it held that even the fact that the non-signatories had the *same president and beneficial owner as the signatories* was not enough to create a sufficiently "close relationship" to constitute an exception to the general rule. *Id*. at 1170.

*Byers* explained the critical need for the non-signatory's claim to be derived from the contract sought to be enforced against it. *Lipcon's inapplicability* to support the use of the equitable estoppel doctrine here is apparent from *Cooper* and *Byers*.

There is nothing in the wording of the forum selection clauses here to indicate an intent for them to apply to either of the Miami CMI entities or to Vikand or to any other third party. In fact, just the opposite, as the section containing the forum selection and choice of law provisions quoted by Defendants' motion merely refers to "[t]he parties to this contract," showing an intent for them not to apply to any third parties. *See* DE 17 1, page 6 of each contract. *See generally, Wolf v. Celebrity Cruises, Inc.*, 683 Fed.Appx. 786 (11th Cir. 2017) ("A third party is an intended beneficiary of a contract between two other parties only if a direct and primary object of the contracting parties was to confer a benefit on the third party.") (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005).

### III. THE FORUM SELECTION CLAUSE IS VOID BECAUSE IT VIOLATES 45 U.S.C. §55

In *Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 377 (1932)(emphasis added) Justice Benjamin Cardozo observed:

> The conditions at sea differ widely from those on land, and the diversity of conditions breeds diversity of duties. This court has said that "the ancient characterization of seamen as 'wards of admiralty' *is even more accurate now* than it was formerly."

In an unbroken line of decisions, the Supreme Court has characterized seamen as "the wards of the admiralty" entitled to special legal protections, [15] in the process often expounding upon the different ways their maritime calling contrasts with land-based occupations. This line of cases has continued into recent years with the Court's

---

[15] See e.g. *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 417 (2009) ("This Court has consistently recognized that the Act 'was remedial, for the benefit and protection of seamen who are peculiarly the wards of admiralty. Its purpose was to enlarge protection, not to narrow it."); *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995); *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971); *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 387 (1970) ("Maritime law had always, in this country as in England, been a thing apart from the common law. . . These principles included a special solicitude for the welfare of seamen. . ."); *Vaughn v. Atkinson*, 369 U.S. 527, 531-2 (1962); *Cox v. Roth*, 348 U.S. 207, 209 (1955); *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 104 (1946) ("the seaman has been given a special status in the maritime law as the ward of admiralty, entitled to special protection"); *O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 40 (1943); *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 246 (1942); *Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 431 (1939)(and cases cited therein); *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528 (1938) (Extending the obligation to provide maintenance and cure beyond the end of the voyage for"'[t]he protection of seamen, who, as a class, are poor, friendless and improvident from the hazards of illness and abandonment while ill in foreign ports.'").

important maritime decisions in cases such as *Atlantic Sounding Co. v. Townsend,* 557 U.S. at 417 and *Chandris, Inc. v. Latsis*, 515 U.S. at 354-5, in which it has justified the continuation of their legally protected status even today, since seamen "'are emphatically the wards of admiralty' because they 'are by the peculiarity of their lives liable to sudden sickness from climate change, exposure to perils, and exhausting labour." *Chandris*, 515 U.S. at 354 quoting from *Harden*, 11 F.Cas. at 483.

To expand upon the legal protections provided to seamen**,** Congress provided in the Jones Act that the "Laws of the United States regulating recovery for personal injury, or death of, a railway employee apply to an action under this section." 46 U.S.C. §30104. The Supreme Court has repeatedly construed this provision to mean that the Jones Act adopts "the *entire* judicially developed doctrine of liability granted to workers by the FELA." *Kernan v. American Dredging Co.,* 355 U.S. 426, 438 (1955) (emphasis added).

One significant portion of FELA adopted by the Jones Act is 45 U.S.C. §55, which prohibits:

> *Any contract, rule, regulation, or device whatsoever*, the purpose or intent of which shall be to enable any common carrier *to exempt itself from any liability* created by this chapter, shall to that extent be *void*.[16]

---

[16] This statute represented a codification by Congress of the well-established general principle that

(emphasis added).

The Court has pointed out in several cases, such as *Norfolk So. Ry. Co. v. Sorrell,* 549 U.S. 158, 168 (2007) and *Phil., Balt. & Wash RR Co. v. Schubert*, 224 U.S. 603, 613 (1912) that one of these important "contingencies" that Congress intended to prevent was "prohibit[ing] employers from contracting around the [FELA]," which was the guiding purpose behind the adoption of 45 U.S.C. §55.

In *Schubert* the Supreme Court "underscore[d] that [45 U.S.C.§55] was designed to prevent employers from making the waiver of claims a quid pro quo of the employment contract. . . *Schubert* makes clear that Congress intended to prevent employers from depriving their employees of the right to recover for job-related injuries." *Wicker v. Consolidated Rail Corp*., 142 F.3d 690, 698 (3d Cir. 1998).

To protect the remedies *it had created*, the Court in *Schubert* reasoned that

---

It has been held in this and other courts that a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy. Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate.

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945). See also *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013)("Given the 'often great inequities in bargaining power between employers and employees' mandatory protections 'not subject to negotiation or bargaining between employers and employees' are needed to ensure that an employer—who has a strong bargaining position—does not take advantage of an employee.").

> The evident purpose of Congress [in enacting 45 U.S.C. §55] was to *enlarge the scope of the section*, and to *make it more comprehensive by a generic, rather than a specific, description*. It thus brings within its purview '*any* contract, rule, regulation*, or device whatsoever*, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act.' It includes *every variety of agreement or arrangement* of this nature . . .

*Schubert*, 224 U.S. at 611 (emphasis added).

The Court further concluded that to give proper effect to Congress' "evident purpose" in protecting the statutory remedy it had created, the qualifying language in 45 U.S.C. §55 must likewise be given an *expansive* effect,

> The words, 'the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act,' do not refer simply to an actual intent of the parties to circumvent the statute. The 'purpose or intent' of the contracts and regulations, within the meaning of the section, *is to be found in their necessary operation and effect in defeating the liability which the statute was designed to enforce*. Only by such general application could the statute accomplish the object which it is plain that Congress had in view.

*Id*. at 613 (emphasis added).

The Court reiterated these principles in *Duncan v. Thompson,* 315 U.S. 1 (1942) (invalidating provisions of post injury partial settlement agreement, which required the trainman to return the advance before suing), *Hogue v. So. R. Co.* 390 U.S. 516 (1968)(trainmen, who sued employer after accepting a minimal payment for injuries, claiming that the settlement resulted from mutual mistake could not have to return the settlement proceeds as a condition precedent to suing) and *Boyd v. Grand Trunk Western R. Co.,* 338 U.S. 263, 265 (1949)(In Duncan the Court

38

"reviewed the legislative history and concluded that 'Congress wanted Section 5 to have the full effect that its comprehensive phraseology implies.'").

The Supreme Court has made it crystal clear that *Congress intended* 45 U.S.§55 to be given a broad application to fulfill its *role as the safeguard of the remedies which it created*. It further left no doubt that to accomplish this goal, the courts should not be fixated on the form of this employer's action, but instead must focus on whether such actions have the "*effect [of] defeating the liability which the statute was designed to enforce.*" *Schubert*, 220 U.S. at 613 (emphasis added). As such the statute protects against "*every* variety of agreement or arrangement." *Id*. at 611 (emphasis added)."

This construction is also mandated by the Supreme Court's recognition that because its "expressed congressional purpose [is] to provide for 'the welfare of seaman'[,] [t]he Jones Act '[a]s welfare legislation * * * is entitled to a *liberal construction to accomplish its beneficial purposes*." *Cox*, 348 U.S. at 210 quoting from *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 790 (1949).

There can simply be no doubt that the use of the paper Bahamian entities constitutes the specific type of scheme intended to circumvent the application of the Jones Act intended to be prohibited by Congress in its adoption of 45 U.S.C. §55. Neither entity maintained any employees, offices, assets or operations in the Bahamas. Nor did the vessel sail to the Bahamas and merely registered there as a

"flag of convenience."

All of the actual operation and management of the vessel took place from the Miami offices of the two CMI entities, who were owned by the same individuals as the paper Bahamian companies. Likewise, the recruitment, hiring, training, supervision, promotion and firing of the crew also was performed by the Miami CMI entities. The only connection which the Bahamas had to the vessel were those performed to perpetrate this scheme to circumvent U.S. law, including the Jones Act—the creation of two paper companies, hiring a law firm to act as a mail drop and the registration of the vessel that never sailed there.

## IV.    THE    FORUM    SELECTION    CLAUSE    CONTRAVENES U.S. POLICY

Even if it was proper to consider the contracts, the court's failure to recognize and apply the exception to enforcement of forum selection clauses in *M/S Bremen v. Zapata Off-shore Co*., 407 U.S. 1 (1972) was error. The central principle of *Bremen* was the recognition that to encourage the continued expansion of American business interests into "overseas commercial activities" that it would be necessary to abandon the "parochial concept that all disputes must be resolved under our laws and in our courts." *Id.* at 8-9.

To accomplish *this specific purpose*, the Court held that "[t]here are compelling reasons why a *freely negotiated* international agreement, *unaffected* by fraud, undue influence, or *overweening bargaining power*, such as that involved

40

here, should be given full effect." *Id*. at 12-13 (emphasis added). This qualification was mentioned eight (8) separate times in the opinion. *See Id.* at 12, 13, 14, 16, 17 and n. 14. It is hard to imagine a situation more opposed to *Bremen* than the typical seaman's contract in which the powerless seaman is given no choice but to sign his or her employment agreement as is without negotiation or changes.

This gross inequality in bargaining power which leads to these type abuses is clearly evidenced by findings in cases like *Rozanska v. Princess Cruise Line, Ltd*., 2008 WL 8883868 (S.D. Fla. Aug. 5, 2008) at *5 (emphasis added), which formed one reason for the court's refusal to enforce a forum selection and choice of law clause:

> This is not a case where the forum selection clause was negotiated by a union on Plaintiff's behalf. It was a "take it or leave it" employment contract. Either Plaintiff signed it "as is," or she did not have an opportunity to work for the Defendant, even after multiple, prior cruises in the employment of Princess. Moreover, Princess selected Bermuda law to apply because there are no comparable causes of action in Bermuda which are similar to the Jones Act or United States admiralty law for maintenance and cure. *The purpose of the clause was to deprive Plaintiff of her Jones Act and maintenance and cure causes of action*, regardless if she sued in Bermuda or Poland, and despite the Defendant's acknowledged base of operations in the United States.

*See, also Castillo*, 937 F.2d at 240 ("there exists a great inequality in bargaining position between large shipowners and unsophisticated seamen. Shipowners generally control the availability and terms of employment.").

In an analogous context, this court recognized in *Nall v. Mal-Motels*, 723 F.3d

1304, 1307 (11ᵗʰ Cir. 2013) that where Congress passes legislation to protect certain classes of employees from waiving their statutory remedies against their employers arising from a lack of bargaining power, that such statutory protections must be respected.

In *Bremen* the Supreme Court made it abundantly clear that it never intended its opinion to serve as a vehicle for employers with *bases of operations in the United States* to subvert the remedies guaranteed seamen by Congress in the Jones Act through foreign forum selection clauses, when it stated:

> A contractual choice-of-forum clause *should be held unenforceable* if enforcement would *contravene a strong public policy* of the forum in which suit is brought whether declared by statute or judicial decision. *See, e.g. Boyd v. Grand Turk W.R. Co.*, 338 U.S. 263.

In *Boyd*, the Supreme Court had held that a clause in a contract executed by a railway worker acknowledging advance payments for injuries sustained in an on-the-job accident that specified the venue for a lawsuit if any future claim could not be settled, was unenforceable under 45 U.S.C. §55, since it deprived the plaintiff of filing suit in one venue specified in the FELA. Although the clause did not change the substantive law, the Court concluded that since the FELA contained specific venue provisions, the plaintiff's "right to bring the suit in *any eligible forum* was a right of sufficient substantiality" of which the railway worker could not be deprived by 45 U.S.C. §55.

The critical principle recognized by *Boyd* was that 45 U.S.C. §55 prevents

employers from taking away *whatever rights and remedies* the statute expressly gives to railway workers through forum selection clauses. In *Boyd* the specific statutory right involved related to venue, however, it is clear from the Court's opinion in that case and its numerous decisions construing 45 U.S.C §55 that the prohibition applies to "any device whatsoever" intended to enable the employer "to exempt itself from *any* liability" created by the statute.

Since the Jones Act expressly adopts the FELA and "the entire judicially developed doctrine of liability-granted to railway workers by the FELA," *Kernan,* 355 U.S. at 439, *Bremen's* use of *Boyd* as an express example of the type of forum selection clause which would be unenforceable for *contravening U.S. public policy* applies equally to seaman under the Jones Act. Therefore, where employers utilize foreign forum selection clauses to deprive seamen of the *specific rights and remedies granted to them by Congress through its adoption of the Jones Act*, such clauses are unenforceable under the express exception recognized by the Court in *Bremen*.

As recognized by this court in *Cvoro,* 941 F.3d at 498 "the United States has an 'explicit public policy that is well-defined and dominant' with respect to the solitude of seamen." Since the passage of the Jones Act, the Supreme Court alone has reiterated the principle over a dozen times that seamen are considered "the wards of admiralty" and as such constitute a legally protected class. See note 16, *supra* and accompanying text.

Therefore, the enforcement of the forum selection clause would clearly violate the admonition in *Bremen* that "a contractual choice-of-forum clause *should be held unenforceable* if enforcement would *contravene a strong public policy* of the forum in which suit is brought whether declared by statute or judicial decision."  As to seamen, this "strong public policy" has been declared by both statute (the Jones Act) and judicial decision (see note 16).

Even more troubling is that the evidence in the record was uncontroverted that the so-called 'employers' of the seven seamen were simply straw foreign paper companies without any land-based employees, offices, assets or actual business operations, maintaining only a mail drop in the Bahamas.  The actual operation and management of the vessel as well as the recruitment, hiring, training, and supervision of the crew was exclusively performed by the American companies in Miami, who had the same ownership as the paper Bahamian entities. Therefore, the facts in the record clearly evidenced that the intent of this scheme was to circumvent U.S. law, including the Jones Act.

  As a result, by enforcing these forum selection clauses, the district court ignored not only the principles upon which *Bremen* was based as discussed above, but also 45 U.S.C. §55, *the very protection which Congress created to safeguard the remedies it had legislated* for seamen and railway workers.

The district court also disregarded the Supreme Court's express holding in

*Garrett,* 317 U.S.  at 246-7 (emphasis added)*,* which established the exceedingly high burden of proof *upon an employer* seeking to deprive a seaman of his guaranteed rights and remedies, when it held:

> If there is *any undue inequality* in the terms, any disproportion in the bargain, *any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other*, the judicial interpretation of the transaction, is that *the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party*, and that protanto *the bargain ought to be set aside as inequitable*.

This burden of proving that the seaman relinquished his rights guaranteed by the law is *upon the employer and not the seaman*.  *Id*. at 248.

It is not enough for the employer to perfunctorily advise the seaman of the terms of the agreement; it must explain "the various rights which he was relinquishing. . . ."  *Bay State Dredging & Contracting Co. v. Porter*, 153 F.2d 827, 831 (1ˢᵗ Cir. 1946).   In doing so, the employer is "under an obligation to bring home to the [seaman] an *understanding of the rights he was giving up* in exchange for the settlement offered."  *Id*. at 833 (emphasis added).[17]

---

[17] Whether the seaman is required to give up his Jones Act rights in a release or by a forum selection clause in an employment contract makes no difference, since in either case he is still being required to give up these rights. See 45 U.S.C. §55 ("*Any* contract, rule, regulation, or *device whatsoever*"). There is also nothing in *Garrett*, upon which Porter is based, which would limit the opinion to releases. In fact, in *Garrett* the Supreme Court relied upon and quoted extensively from Justice Story's opinion in *Harden v. Gordon*, 11 Fed.Cas. 480 (1823), which held that a shipowner could not deduct the expenses of cure provided in a foreign port from a seaman's

Instead of following *Garrett's* directive the district court reversed the burden of proof and held that the plaintiffs must make "'a strong showing' that enforcement would be unfair or unreasonable under the circumstances." (DE 38, p. 8). This was error.

The district court's further contention that "Plaintiff does not argue that the clause was the result of fraud or overreaching," (DE 38, p. 9), is also inaccurate. In contrasting Judge Gold's opinion in *Rozanska v. Princess Cruise Lines, Ltd*., 2008 WL 8883868 (S.D. Fla. Aug. 5, 2008) with his earlier decision in *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F.Supp.2d 1317 (S.D. Fla. 2000) in their Response to Defendants' Motion to Dismiss, the Plaintiffs argued

> In *Webster*, which did not involve the Jones Act, Judge Gold relied upon *Bremen* to uphold the forum selection clause, finding that since the CBA had been negotiated by a seaman's union, there had been no evidence of unfair bargaining. *Id*. at 1323. In *Rozanska,* 2008 WL 8883868 at *5, which did arise under the Jones Act, however, Judge Gold rejected the defendant's argument that the forum selection clause was enforceable under *Bremen*, because
>
> > there was a complete imbalance in bargaining power in favor of the Defendant. This is not a case where the forum selection clause was negotiated by a union or on Plaintiff's behalf. It was a "take it or leave it employment contract."
>
> *The same is true here.*

DE 20 at p. 20 (emphasis added).

___

wages based upon a provision allowing such deductions *inserted into their shipping articles*.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should reverse.

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B).  This brief contains 12,476 words.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 7, 2022 this document was electronically filed with the Clerk of the Court using CM/ECF and  served by email transmission on William F. Clair, Jerry D. Hamilton, Annalisa Gutierrez, Evan Gutwein and Gilda Chavez, Hamilton, Miller & Birthisel, 150 Southeast Second Avenue, Suite 1200, Miami, Fla 33131 at jhamilton@hamiltonmillerlaw.com; wclair@hamiltonmillerlaw.com; agutierrez@hamiltonmiller.com; gchavez@hamiltonmiller.com and egutwein@hamiltonmiller.com.

> Robert D. Peltz, Esq.
> Florida Bar No.: 220418
> The Peltz Law Firm, P.A.
> *Counsel for Appellants/Plaintiffs*
> P.O. Box 56-0003
> Miami, FL  33256
> Tel. 786-732-7219
> Email: RPeltzlaw@gmail.com
>                 and
> Philip D. Parrish, P.A.
> *Counsel for Appellants/Plaintiffs*
> 7301 S.W. 57th Court, Suite 430
> Miami, Fla. 33143
> Tel. 305-670-5550
> Florida Bar No. 541877
> phil@parrishappeals.com
> By:  */s/ Philip D. Parrish*
>          Philip D. Parrish

and

Louis A. Vucci, Esq.
Louis A. Vucci, P.A.
*Counsel for Appellants/Plaintiffs*
One S.E. Third Ave., Suite 3020
Miami, Florida 33131
Tel. 305-573-0125
Florida Bar No. 131581
louis@thevuccilawgroup.com
vuccilawgroup@gmail.com